**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| LUCIO ARREOLA RAMOS,<br>Petitioner,<br>v.<br>THOMAS GILES, et al.,<br>Respondents. | Case No. EDCV 26-4467-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

On August 7, 2026, Lucio Arreola Ramos (A# 088-382-296) ("Petitioner"), who is represented by counsel and is an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") claiming that his detention since May 15, 2026, without a bond hearing violates due process. (Dkt. No. 3). On August 17, 2026, Respondents filed a Response to the Petition, contending that Petitioner does not merit immediate release because he is lawfully detained under 8 U.S.C. § 1226(a),

but they "do not oppose the Court ordering a bond hearing" under that provision. (Dkt. No. 9).

For the reasons stated below, the Petition is GRANTED to the extent that Respondents are enjoined from continuing to detain Petitioner unless he is provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and all applicable regulations.[1]

**BACKGROUND**

Petitioner is a native and citizen of Mexico with strong ties to the United States, including his wife and five children who are all U.S. citizens. (Petition ¶¶ 9, 23).[2] He was arrested by ICE on May 15, 2026. (Id. ¶ 16). Two weeks later, on June 1, an asylum officer interviewed him and found he did not have a reasonable fear of returning to Mexico. (Id. ¶ 18). An immigration judge then affirmed that determination after a hearing on June 18, 2026. (Id.). That same day, Petitioner timely filed a petition for review of that decision with the Ninth Circuit Court of Appeals, and the matter remains pending. (Id.).

---

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 3-6).

[2] Citations to the Petition refer to the numbered paragraphs of the typewritten version of the Petition that is attached to the Court's form § 2241 petition. (See Dkt. No. 3 at 10-17).

Petitioner also has filed a Form I-360 visa petition under the Violence Against Women Act, as he is allegedly eligible for such relief through his spouse. (Id. ¶ 24). That and a concurrently filed Form I-485 application to adjust status are both pending before U.S. Citizenship and Immigration Services. (Id.).

To date, Petitioner has not received any bond hearing before an immigration judge. (Id. ¶¶ 2, 31).

**DISCUSSION**

Petitioner's detention is governed by 8 U.S.C. § 1226(a), under which the government may arrest and detain noncitizens "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); see Rodriguez Vazquez v. Bostock, -- F.4th --, 2026 WL 2196424 (9th Cir. 2026) (holding that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)"); Prieto-Romero v. Clark, 534 F.3d 1053, 1062 (9th Cir. 2008) ("Section 1226(a) on its face authorizes the detention of [noncitizens] during the removal order review process."). Detention under § 1226(a) is "discretionary" and "provides for release on bond or conditional parole." Avilez v. Garland, 69 F.4th 525, 530 (9th Cir. 2023).

Accordingly, Petitioner merits an order requiring the government to provide him a prompt bond hearing before an immigration judge pursuant to § 1226(a) and all applicable

regulations. To the extent that Petitioner instead seeks immediate release, the present record does not support such relief here. It is true that ordering a post-deprivation bond hearing does not always suffice for immigration detainees subject to § 1226(a). In particular, as district courts in this Circuit have concluded, noncitizens who are re-detained after previously being released on an order of supervision have a right, under the Due Process Clause, to pre-detention notice and a hearing, and a post-deprivation bond hearing is not an adequate remedy for the failure to provide those pre-deprivation procedures; in such cases, therefore, the petitioners are typically granted immediate release from custody. See, e.g., Sompal v. Semaia, 2026 WL 311587, at *4-6 (C.D. Cal. Feb. 3, 2026); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1166 (C.D. Cal. 2025). But this is not such a case, as Petitioner apparently was not previously released from ICE custody on an order of supervision and had no due process right to a pre-detention hearing, and he otherwise has no due process right to immediate release from detention.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal

proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.

Because Petitioner therefore has at least some liberty interest in remaining out of custody, the Due Process Clause requires Respondents to provide him "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). To determine what process he is due, the Court considers the following three factors from Mathews:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335.

As to the first factor, Petitioner's private liberty interest is limited, notwithstanding that he has "strong ties to the United States," including his wife and five children who are all U.S.

citizens (Petition ¶ 23), because he apparently was never determined to merit being out of custody, and the government generally has the authority to arrest and detain noncitizens pending a decision on their removal, under 8 U.S.C. § 1226(a). In this way, Petitioner's situation differs considerably from those noncitizens who were previously detained and then released from immigration custody. The government's decision to release such individuals from custody creates "an implicit promise," upon which that individual may rely, that his or her liberty "will be revoked only if he [or she] fails to live up to the . . . conditions [of release]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972); see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). As Petitioner, it seems, had received no such "implicit promise" or other assurance, his claim to a protected interest in remaining at liberty was more tenuous.

Second, because Petitioner had not previously undergone an assessment of his status or a determination as to whether his release would pose a danger to the community or a flight risk, providing him with a post-detention hearing, rather than a pre-detention hearing (or immediate release), would pose only a low or moderate risk of erroneous deprivation of liberty. See also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1209–10 (9th Cir. 2022) (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural

protections, including individualized custody determinations and right to seek additional bond hearings). Again, in this respect Petitioner's situation differs significantly from those who were previously released from detention upon a finding that they do not pose a danger or flight risk. See, e.g., Rivera Larios v. Albarran, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." (citing Garcia v. Andrews, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Arzate v. Andrews, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025))).

Third, "the government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law,'" and thus in detaining noncitizens to "'increas[e] the chance that, if ordered removed, the [noncitizens] will be successfully removed.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore v. Kim, 538 U.S. 510, 515, 528 (2003)). That interest is naturally greater for noncitizens who present a flight risk while removal proceedings are pending against them. But where Petitioner had not previously been subject to removal proceedings and had not been assessed for flight risk or danger, the government's interest in detaining him at least initially was significant. Cf. Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("Due process protects against immigration detention that is not reasonably related to

the legitimate purpose of effectuating removal or protecting against danger and flight risk." (citing Zadvydas, 533 U.S. at 690-91)).

On balance, the Mathews factors suggest that Petitioner was not entitled to a pre-detention hearing, and his due process rights are adequately addressed by a post-deprivation bond hearing pursuant to § 1226(a). See, e.g., Quinonez Herrera v. Mullin, 2026 WL 915184, at *3 (C.D. Cal. Apr. 3, 2026) (petitioner who was not on supervised release when detained failed to demonstrate that due process entitled her to release rather than a bond hearing under § 1226(a)); Okoth v. Kaiser, 2026 WL 45199, at *2 (E.D. Cal. Jan. 7, 2026) (rejecting petitioner's claim that he was entitled to a pre-detention hearing where, unlike in cases involving noncitizens who were re-detained while on supervised release during the pendency of removal proceedings, petitioner had not been previously detained and released on bond).

**ORDER**

Accordingly, the Court GRANTS IN PART AND DENIES IN PART the Petition (Dkt. No. 3) as follows: (1) the Court GRANTS the Petition to the extent that Respondents are enjoined from continuing to detain Petitioner Lucio Arreola Ramos (A# 088-382-296) unless within seven (7) days he is provided a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and all applicable regulations; and (2) otherwise, the Court DENIES the Petition. Respondents are further ORDERED to file a status report within

eight (8) days advising the Court as to whether Petitioner has received a bond hearing, the outcome of the bond hearing, and Respondents' compliance with the Court's Order

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 20, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE